### DAGGETT *against* TALLMAN.

The same presumption of payment from lapse of time is applicable to promissory notes not negotiable, as to bonds ; and the presumption is rebutted, by similar circumstances, in both cases.

The absence of the debtor from the state, during the greater part of the period relied on to create the presumption, will rebut it.

And it makes no difference whether the residence of such absent debtor be in an adjoining state, or in one more remote.

The fact that the debtor, at a certain point of time during the period relied on to create the presumption, was a bankrupt, will not, of itself, rebut such presumption.

The acts and declarations of a witness, who has given his testimony in a deposition taken *ex parte*, may be proved, on the principle of a cross-examination in court, for the purpose of evincing the biases under which he testified.

Where notice was given of the taking of a deposition, at a certain time and place, before *A.*, who was not authorized to take depositions, and the deposition was taken at the time and place specified, before *B.* a duly qualified magistrate ; it was held, that such notice was insufficient, and consequently, that the deposition was not legally taken.

It seems, however, that if the citation, in such case, had named *A.*, or *some other proper authority*, the deposition might have been lawfully taken before *B.*

Where the only evidence offered in support of a plea of full payment to an action on a promissory note, was the deposition of *C. ;* and it appeared, that *C.* had given a deposition in a former cause between the same parties, which was copied from one drawn up by the defendant ; that the defendant obtained from the files of the court a copy of that deposition, just before he applied for the one in question ; and that the latter deposition was, in all material points, a copy of the former, only so varied in words as not to appear identical ; it was held, that such deposition was not legally admissible, and, if admitted in fact, without objection, was not equivalent to the testimony of one credible witness ; and consequently, was not sufficient to establish the defendant's plea.

*New-Haven,*
*July,* 1830.

Daggett
*v.*
Tallman.

THIS was an action, brought by *Henry Daggett*, jun., surviving partner of the late firm of *Atwater & Daggett*, on a promissory note, for 30 dollars, 64 cents, dated *New-Haven, July* 30th, 1802, payable to *Atwater & Daggett*, or order, thirty days after date, with interest. The suit was commenced on the 27th of *May* 1827.

The defendant pleaded full payment, first, generally, and then specially, in two or three different forms. These pleas were traversed, by the plaintiff ; on which issue was joined.

The cause was tried, on this issue, at *New-Haven, January* term 1830, before *Daggett,* J.

On the trial, the defendant, in the first place, relied on lapse of time. From the time the note fell due, to the commencement of the action, was twenty-four years and nine months. The defendant left this state, in *April,* 1806, and from that

time to the middle of *November* 1825, resided in the state of *New-York*. During this period, he had been in *New-Haven* twice, a day or two each time. He then removed into this state, and has ever since resided here. There was no evidence to shew, that he was, at any time, a man of property; but it appeared, that in 1819, he was a bankrupt. On the case thus presented, the judge informed the jury, that they were at liberty, if they believed the testimony, to consider the proof of payment as rebutted.

The defendant then attempted to establish his defence, by direct proof of payment; and for this purpose, offered in evidence the deposition of *Joshua L. Church;* who testified, that in the summer of 1819 or 1820, he left *New-York* in company with the defendant, and came to *New-Haven;* that *Ward Atwater,* (of the firm of *Atwater & Daggett,*) said to the defendant, on the long wharf, that there was a small sum of money, about 20 dollars, due from him to *Atwater & Daggett,* on an old note and book account; that the defendant said, he would pay it, though he had not money enough to pay it then; that *Atwater* said, he should be at *New-York,* during the next week; that the defendant said, he would then be at *Burling-slip* and pay it; that he accordingly met *Atwater,* at the time and place specified, and paid him the full amount claimed to be due; that *Atwater* said, he would go on board the vessel and give him a full discharge from *Atwater & Daggett's* demands; that the defendant said he need not, as the demands were long since out-lawed, but when convenient, he might destroy the note and cross the book. With these more prominent facts, the deponent interspersed a variety of minute circumstances. The plaintiff, to shew the bias on the mind of *Church,* and his unwillingness to testify for the plaintiff, offered the deposition of *Robert D. Hepburn* of *New-York,* taken within twenty miles of the residence of the defendant; to the admission of which he objected, on the ground, that the magistrate, before whom he was notified to attend the taking of the deposition, was not qualified to take depositions, and he had no notice to attend before the magistrate by whom it was taken. The time and place specified in the notice served on the defendant, were the true time and place; but it being discovered that the person named in the notice as the magistrate, was not qualified to take depositions, another person, who was duly qualified, attended, and took the deposition. The defendant did not attend.

New-Haven,
July, 1830.

Daggett
v.
Tallman.

In this deposition, *Hepburn* testified, that he went to *Hanover*, in *New-Jersey*, to get *Joshua L. Church's* deposition, to be used in this suit; that *Church* promised to meet him at a time and place specified, for that purpose, and disappointed him; that the deponent found *Church* again, when, after making various objections, (which are detailed in *Hepburn's* deposition) he agreed to meet him in *New-York* and give the deposition requested; that the deponent returned to *New-York*, and, on his way, met the defendant going to find *Church;* and that *Church* did not appear in *New-York* to fulfil his agreement.

It was an admitted fact, that *Church*, on the same day on which he so refused to give his deposition to the plaintiff and agreed to give it in *New-York*, gave, in *New-Jersey*, to the defendant, on his request, and *ex parte*, the deposition first above-mentioned.

The plaintiff also offered to read the deposition of *Joshua L. Church*, lodged, by order of court, on file, taken in this cause, and used at the preceding term of the court in another cause then tried between the same parties, accompanied with proof that such deposition was drawn up by the defendant, and copied by his attorney, and was imposed on the court as proper evidence; and that the deposition of *Church* now read would appear, by inspection, to be substantially a copy of the other so illegally taken. It appeared, that the defendant, after the deposition was lodged on file, obtained from the clerk a copy of it. This deposition was objected to, by the defendant; but the judge admitted it, for the purpose of shewing, that the imposition practised in the former cause, was now attempted to be practised in this.

The plaintiff contended, that the deposition of *Church* introduced by the defendant, which was all the proof offered by him, except that arising from lapse of time, carried on its face evidence of its falsity, in its extreme particularity and detail of unusual circumstances attending the alleged payment.

On this part of the case, the judge charged the jury, that the deposition of *Hepburn* might conduce to prove a reluctance on the part of *Church* to testify for the plaintiff, and a bias against him and in favour of the defendant; and thus it was proper to be considered in weighing *Church's* testimony: that the law requires the testimony of one credible witness to establish any fact in a court of justice: that if they were satisfied from the internal evidence which the deposition of *Church* afforded, compared with the other deposition so illegally taken, that this

New-Haven, was substantially copied from that, and did not contain a true
July, 1830. statement of facts, they ought not to found their verdict upon
Daggett    it; but if they believed that this deposition contained the truth,
v.    they ought to find for the defendant.
Tallman.

The jury returned a verdict for the plaintiff, with which the
judge expressed himself to be well satisfied, without regard to
the deposition of *Hepburn*. The defendant moved for a new
trial, on the ground of error in the interlocutory decisions and
in the direction to the jury.

*N. Smith* and *Hitchcock*, in support of the motion, contend-
ed, 1. That the charge in relation to the presumption from
lapse of time, in this case, was incorrect. That the lapse of
time sufficient to bar an action on the note under the statute of
limitations, will, in the absence of special circumstances ac-
counting for the delay, raise a presumption of payment, is un-
questionable. 2 *Stark. Ev.* 310. *Giles* v. *Baremore*, 5 *Johns.*
*Chan. Rep.* 551.

In the first place, the defendant's residence in *New-York*,
did not repel the presumption. During this portion of time,
the plaintiff was under no disability to sue. The courts of
*New-York* were as accessable to him as those of his own state.
Here was, at most, only an inconvenience in suing. But as a
mere matter of convenience or inconvenience, is it true, that a
citizen of *New-Haven* will not probably enjoy what belongs to
him,—provided he has to look for it in *New-York?*

Secondly, as the neglect of the plaintiff to assert his right
begun and continued three or four years, before the defendant
went away, and a year or two after his return, the intervening
absence of the defendant, in analogy to the decisions under the
statute of limitations, cannot have any effect.

Thirdly, the insolvency of the defendant was not such as to
repel the presumption. There is nothing in the case, in rela-
tion to this matter, except the single fact, that in 1819, the de-
fendant was a bankrupt. For aught that appears to the contrary,
(and insolvency is not to be presumed without proof) he was a
man of property during the whole period before and after this
point of time.

If the presumption was not repelled on these grounds, the
charge was wrong; for no other fact was submitted to the
jury as a ground of repelling it. The judge indeed, submitted
nothing to them but the credibility of the witness, directing

them, if they believed the testimony, to consider the proof of <span style="float:right">*New-Haven,*<br>July, 1830.</span> payment as rebutted.

2. That the testimony of *Hepburn* was inadmissible. <span style="float:right">Daggett<br>*v.*<br>Tallman.</span>

In the first place, it did not conduce to prove a bias or prejudice on the mind of *Church* against the plaintiff, and in favour of the defendant. The facts stated are collateral and irrelevant, and prove nothing material. 1 *Stark. Ev.* 134. 145. 1 *Phill. Ev.* 38. n. If such facts were admissible, under this issue, the enquiry would be interminable.

Secondly, the credit of a witness cannot be impeached, by proof of any thing that he has said or done in relation to the cause, until he has been cross-examined, and upon such cross-examination, has been asked, whether he has so said or done. 3 *Stark. Ev.* 1753.

Thirdly, if such facts may be proved, without a previous cross-examination of the witness in relation to them, they must be proved as other facts are proved, by witnesses under oath; not by conversations between third persons. *Church's* declarations out of court were not offered to *contradict* what he had testified to in his deposition, but to prove certain facts, from which the jury were to infer, that he had a prejudice against the plaintiff and a partiality for the defendant. This was mere *hearsay*.

3. That *Hepburn's* deposition itself, without regard to its contents, was inadmissible, not having been legally taken. The defendant had no notice whatever to appear before the magistrate who took the deposition; and his having been notified to appear before another person who was not qualified to take depositions, did not constitute reasonable notice, or supply the want of it. The latter notice the defendant might well regard as a nullity. Why should he go before the person named in it, when he knew, that that person could not take the deposition? It was, in effect, notice *to stay away*.

*R. S. Baldwin* and *Seeley*, contra, contended, 1. That the presumption of payment from lapse of time was rebutted, both by the defendant's residence abroad and by his bankruptcy. "The insolvency of a debtor constitutes an impediment to the collection of a debt, and repels any presumption of payment from the omission of a demand, which must be nugatory." *Boardman* v. *De Forest*, 5 *Conn. Rep.* 8. Residence abroad is also considered, in the same case, as amounting to a disability. So in

New-Haven, *Lynde* v. *Denison*, 3 *Conn. Rep.* 396. it was said by *Chapman,*
July, 1830, J. that "it requires twenty years at the least, and during the
Daggett whole of that time, I conceive, the plaintiff must have had the
*v.* power of prosecuting his claim," &c. The distinction between
Tallman. the statute of limitations creating a *bar* and the presumption of
payment from lapse of time, is pointed out, by Ch. J. *Hosmer,*
in the case last cited : (*p.* 392, 3.) and it is there stated, that the
time during which there was a disability to sue, or no remedy
could be had, must be expunged from the computation. These
cases settle the law in *Connecticut* In *Newman* v. *Newman,*
1 *Stark. Ca.* 101. Lord *Ellenborough* held, that the defend-
ant's absence abroad rebutted the presumption of payment from
lapse of time. See also *Jackson* v. *Pierce*, 10 *Johns. Rep.*
417. *Baily* v. *Jackson*, 16 *Johns. Rep.* 214. *Hillary* v. *Wal-
ler,* 12 *Ves.* 266. *Phill. Ev.* 114. n. *b.*

2. That the deposition of *Hepburn* was properly taken, rea-
sonable notice having been given to the defendant to be pre-
sent at the time of taking such deposition. *Stat.* 47. *tit.* 2. *sect.*
44. It is not necessary that the magistrate should be named
in the citation. If a person be named who is not qualified to
take the deposition, the only effect is, that that name is to be
considered as a blank ; but the notice is not annulled as to time
and place.

3. That the testimony of *Hepburn*, in connexion with the
facts admitted on the trial, was relevant and proper. It was
in the nature of a cross-examination of *Church*, tending to
shew the prejudice under the influence of which he testified.
The most liberal range of enquiry is allowed, for the purpose
of ascertaining the biases of a witness. 1 *Stark. Ev.* 96. 129.
131. The deposition of *Church* was taken *ex parte*. The
facts, as minutely detailed by him, regarding a transaction
which took place eight years before, are incredible, upon gener-
al principles. 1 *Gilb. Ev.* 287. 300. *Swift's Ev.* 149. The
evidence of *Hepburn* evinces a combination between *Church*
and the defendant. *Church*, at first, very readily offers to give
his deposition to *Hepburn*, on the spot. As soon as he learns
who the parties are, he shuffles and equivocates. When all his
objections are obviated, and his expenses are offered to be
paid, and he perceives that he can no longer evade the matter,
he then agrees positively to go to *New-York*, on a certain day,
and give his deposition. *Hepburn* having just started to return
home, met the defendant in pursuit of *Church*, who, on the

New-Haven,
July, 1830.

Daggett
v.
Tallman.

same day, and at the same place, gave his deposition *ex parte* to the defendant. In pursuance of the same object, to aid the defendant and avoid a cross-examination, he then violated the agreement to meet the plaintiff's agent in *New-York* and give his deposition there. All these facts go strongly to shew a reluctance to testify at the plaintiff's request, and a bias in favour of the defendant. They are, therefore, very proper to be considered by a jury in weighing *Church's* testimony.

But it is unnecessary to press this point ; for no exception was taken, at the trial, to the admissibility of *Hepburn's* deposition, on the ground that the facts sworn to did not tend to shew a bias on the mind of *Church.* The exception which was taken being overruled, the only question then was, whether any and what consideration was to be given to it, in weighing *Church's* testimony. In that view, it was commented on, by counsel ; and the judge, after remarking to the jury, that the facts detailed by *Hepburn* might tend to shew a reluctance in *Church* to testify for the plaintiff, and a bias against him, left all the circumstances to the jury to be weighed by them.

4. That whether *Hepburn's* deposition was admissible or not, still a new trial will not be granted, because *Church's* second deposition was merely a transcript of the first, which was fabricated by the defendant himself ; and had the plaintiff objected to its admissibility, instead of allowing the jury to pass upon it, the court would have rejected it. No credit ought to be given to it, aside from *Hepburn's* testimony. Justice has been done.

Daggett, J. This motion is founded on the supposed errors of the judge in the admission of testimony, and in his charge to the jury.

The action is on a promissory note, made by the defendant to the plaintiff and *Ward Atwater*, now deceased, and which became due on the 30th of *August*, 1802. The defendant has pleaded full payment, in several different forms. This difference in the forms of pleading may be laid out of the case ; for it is agreed the principles are the same. The only question on the merits, is, was this note fully paid when the suit was brought? This is the position to be sustained, by the defendant ; and in support of it, he relies on two sources of proof; first, the lapse of twenty years before the action was instituted ; secondly, the deposition of *Joshua L. Church.*

New-Haven, July, 1830.

Daggett
v.
Tallman.

1. The lapse of twenty years.   A promissory note made in 1802, when no statute existed making notes negotiable, is placed, by our statute, on the same ground with bonds.   The same presumption of payment by lapse of time, is admitted in proof, and has the same operation.   The principle is, that after the lapse of twenty years, without any payment or demand of payment, or any acknowledgment by the obligor, a presumption arises that the bond has been satisfied.   This presumption may be, like other presumptions, rebutted, by proof of circumstances.   This doctrine is to be found in all our elementary treatises on the subject, and in numerous adjudged cases.   One of those circumstances is a residence abroad, during the twenty years.   2 *Stark Ev.* 310.   *Lynde* v. *Denison,* 3 *Conn. Rep.* 387.   *Boardman &* al. v. *De Forest,* 5 *Conn. Rep.* 1.

It appears in this case, that the defendant removed out of this state into the state of *New-York,* in *April* 1806, and resided in the state of *New-York* until the middle of *November* 1825, when he returned to this state, and continued here till the suit was brought, in *May* 1827.   During this period, he had been in the state twice, for a day or two each time.   Thus he has been without the jurisdiction of the courts of this state, the whole time since the date of the note, excepting the period of about five years.

It was also proved, that in 1819, he was a bankrupt; and there was no proof, that at any time he was a man of property. These facts may be laid out of the case; for there is nothing sufficiently definite with respect to his ability to pay, since 1819, on which to found an opinion.

The question recurs, is the fact of the absence of the defendant from the state, sufficient to warrant the jury to consider the presumption of payment rebutted?   The court charged the jury to that effect.   Was the charge correct?

In the case of *Lynde* v. *Denison,* 3 *Conn. Rep.* 396. the Court say, that twenty years must have elapsed to let in the presumption; and during that whole time, the plaintiff must have had the power of prosecuting his claim.   According to *Boardman* v. *De Forest,* 5 *Conn. Rep.* 1. the absence of the debtor abroad constitutes such an impediment to the recovery of the debt, as repels the presumption.   To the same point is *Newman* v. *Newman,* 1 *Stark. Ca.* 101.   (2 *Serg. & Lowb.* 314.)   1 *Phill. Ev.* 119.

Thus, the neglect of the plaintiff to sue is accounted for, and

the presumption repelled; for the plaintiff was not bound to <span style="float:right">*New-Haven,*<br>July, 1830.</span> follow the defendant abroad, and to prosecute his claim wherever the defendant might choose to reside.

Daggett
*v.*
Tallman.

It is however insisted, that as the defendant resided in a state bordering on *Connecticut,* the plaintiff might have there prosecuted his suit, and taken the benefit of its laws and courts, to enforce payment. The Court, however, believe, that no laches are imputable to the plaintiff on this account. The courts and jurisdiction of *New-York,* are foreign courts, and a foreign jurisdiction, in respect of the citizens of *Connecticut. Hempstead* v. *Read,* 6 *Conn. Rep.* 480. The only difference is, that a judgment rendered in a neighbouring state, where the parties appeared and were heard, is conclusive. This is a provision of the constitution of the *United States. Art.* 4. *sect.* 1.

But the Court cannot vary the rule, as the state is more or less remote. If the defendant had been absent in the state of *Kentucky* or *Louisiana,* would the plaintiff have been guilty of neglect? And shall he lose his debt, because he did not follow him there? This impediment created by the defendant, whose duty it was to have paid the debt in *New-Haven,* where it was contracted, sufficiently rebuts the presumption of payment. The charge therefore was correct.

2. The deposition of *Hepburn* was not relevant; and therefore, ought not to have been received. It was admitted, by the court, to show a reluctance on the part of *Church,* to testify for the plaintiff, and a bias and prejudice in favour of the defendant. Taken in connection with the facts admitted by the motion, I have no doubt that this deposition was proper evidence for the purpose for which it was admitted. Surely, the deponent *Church,* had he been present as a witness, might have been cross-examined on all those points; and had he denied the facts, proof of them might have been received to weaken his testimony. This doctrine is too familiar to require much illustration. " By this means," (a cross-examination,) says a learned commentator, " the situation of the witness with respect to the parties, and the subject of litigation, his interest, his motives, his *inclination and prejudices,* his *means of obtaining a correct and certain knowledge of the facts to which he bears testimony,* are fully investigated and ascertained, and submitted to the consideration of the jury, who have an opportunity of observing the *manner* and *demeanor* of the witness—circumstances, which are often of as high *importance as the answers*

*New-Haven,* *themselves."*  1 *Stark. Ev.* 129. 130.   Had the witness, then,
July, 1830.  been present, this course might have been pursued.

Daggett          But it is said, that as he was not present, and could not have
*v.*        been cross-examined, the plaintiff cannot be permitted to show,
Tallman.     by competent testimony, these facts.   This would be strange
indeed !   Is it to be endured, that the deposition of a man in-
terested, biassed and prejudiced, is to be read, and no suspi-
cion created, because the defendant has seen fit to resort to
this mode of proof, rather than by causing the witness to ap-
pear to testify orally, and thus be subjected to a cross-exam-
ination ?   Surely not.

3. But there is another objection.   This deposition ought
not to have been admitted, because the defendant was cited to
appear before a magistrate not authorized to take depositions,
and the deposition was taken before *another* magistrate, who
was duly authorized.   A majority of the Court sustain this ob-
jection.   They are of the opinion, that a practice so loose,
might tend to countenance fraud in taking depositions, and
that there cannot be any necessity, nor even convenience, in
tolerating it.   I am of opinion, that as the statute (*p.* 47. *tit.* 2.
*sect.* 44.) provides only " reasonable notice," and that deposi-
tions may be taken by any justice of the peace, it was not ma-
terial, in the view of the legislature, that the justice of the
peace should be named ; and that as the motion finds, neither that
the defendant knew, nor that he did not know, that the magistrate
was authorized to take depositions, he ought to have appeared ;
and as he did not, that he cannot now make the objection.   The
court further agree, that if the citation had mentioned the ma-
gistrate by name, *or some other proper authority,* it would
have been good, according to our practice.   These two objec-
tions are thus stated and examined, not because it is absolutely
necessary that they should be decided in this case ; but as this
subject is of frequent occurrence at trials, a decision upon
them may prevent future litigation.

4. The Court unanimously deny the motion, on the ground
that it sufficiently appears, that there is no evidence in the de-
fendant's testimony of any just defence to this suit.   It is
found by the court below, and we think correctly, that the tes-
timony, without the deposition of *Hepburn,* is wholly insuffi-
cient to sustain the defence of full payment.   It is supported
only by the single deposition of *Joshua L. Church.*   It appears
by the case, that this *Church* had given a deposition in a for-

mer cause between the same parties, which was copied from a deposition drawn up by the defendants. A copy of this deposition, thus imposed on the court, was taken from the files of the clerk, where by order of the court it had been lodged, a short time before the present deposition was given. The defendant then had an opportunity to furnish another copy of *his own statement of the facts* to the deponent to attest to ; and the court cannot fail to notice such a similarity in all material points, as to pronounce them copies of each other ; only so *varied in words* as to show that they are not *identical.* This being the condition of the deposition of *Joshua L. Church,* and it being the only proof of payment, it might have been ruled out, had it been objected to ; but as it was admitted without objection, the court, under the circumstances, cannot give to it the force of the testimony of one credible witness ; which is the lowest requisition of the law, to establish any fact in a court of justice. It savours too much of testimony made by the party, to deserve credit. The motion ought, therefore, to be disallowed.

*New-Haven,*
*July,* 1830.

Daggett
*v.*
Tallman.

PETERS, J. was of the same opinion throughout.

HOSMER, Ch. J. and WILLIAMS and BISSELL, Js. concurred on all the points. except in relation to the taking of *Hepburn's* deposition. They were of opinion, that a notice to appear before a person not authorized to take a deposition, might be treated as a nullity ; and consequently, that the deposition of *Hepburn,* taken without legal notice, ought to have been rejected. This, however, for the reason suggested by Judge *Daggett,* would, in their view, make no difference in the result.

New trial not to be granted.