Day, C. J.
The plaintiffs claim to be the owners of the-land in question, and seek to enjoin the defendants from setting up a claim thereto. Both parties claim title from Samuel Barnett — the plaintiffs as his heirs, and the defendants by deed of mortgage from him to Adam Everly, their testator.
On the 8th day of October, 1818, Samuel Barnett, being* the owner of the land, conveyed it to Adam Everly by deed, conditioned to be void on payment of $2,426 within five-years. In September, 1823, Barnett died, intestate, leaving Catharine Barnett, his widow, and á family of children living on the land. The wife of Barnett did not join in the mortgage. After his death, the widow and some of hisehildren continued to reside on the land until the death of the widow, in December, 1851.
Everly filed a bill in chancery against the widow and heirs of the mortgagor to foreclose the mortgage, and a-decree pro confesso was entered, an appraisement of the premises was ordered, and the amount due on the mortgage • was found to be $4,390.91.
April 28,1836, an appraisement being returned, the court-found the value of the lands to be less than the debt, and made their order that the heirs pay the amount due on the mortgage, within six months from the rising of the court; and, in default of such payment, that the defendants stand absolutely foreclosed of their equity of redemption, and that a writ of seizin- issue, but upon such payment that the mortgagee reeonvey.
The dower of the widow was never assigned, and theappraisement and foreclosure were subject to her dower.. *110 After the death of the widow, some of the children continued to occupy the premises, and nothing was done by Everly to disturb them’ until November, 1864, when he sent ■an agent to the premises, where he found two of the plaintiffs.
They do not seem to have disputed Evei’ly’s ownership of the land; and Sarah Barnett, who alone controlled the premises after the death of her mother, executed a written instrument acknowledging his right thereto. It was then .agreed that she might enjoy the premises during the life of Everly.
Everly died in September, 1865; and, about two years thereafter, the defendants being about to sell the land, this action was brought by the plaintiffs to quiet their title thereto.
The plaintiffs found their claim chiefly on two grounds: 1. Title obtained by adverse possession for a period of over twenty-one years : 2. Payment of the decree founded ■on the mortgage, thereby leaving them the owners of the land, as heirs of Samuel Barnett.
Was the possession of the plaintiffs and those under whom they claim adverse to Adam Everly? We think not. His rights as mortgagee were never disputed. The mortgagor and his family resided on the land until his death. His children, being minors, continued to live there with their mother after his death, until some of them died .and others found homes elsewhere. One remained with the widow until her death in 1851, and since then has continued in possession of the premises. But neither the widow nor children ever asserted a right to the land adverse to that of Everly. Nor did Everly ever dispute the widow’s right of dower therein : on the contrary, he protected her from embarrassment in its enjoyment by purchasing the pretended claim of a purchaser thereof at a judicial sale against hér. The children of Barnett did not ■enter upon the premises after his death as his heirs, and hold without a recognition of the mortgagee’s title. Ou ■the contrary, they suffered him in 1836, to take a decree *111 Against them, which established, at least, his rights as mortgagee against them. The acts of Sarah Barnett, the only heir who can be claimed to have a continuous possession, unequivocally recognized the title of the mortgagee. From first to last, the plaintiffs have stood in no better position than that of a mortgagor in possession. No principle is better settled than that a mortgagor occupies by the express or implied consent of the mortgagee, and therefore his possession is not adverse. The plaintiffs, therefore, have acquired no title by adverse possession. Ang. on Lim., 5 ed., sec. 449, et seq.; 1 Hilliard on Mort. 165.
Has the amount decreed to be due on the mortgage been paid ? The time that has elapsed since the rendition of the decree raises a presumption that it has been, and this is the only evidence of payment in the case. But this presumption is one of fact merely, and may be rebutted.
There is a manifest distinction between those cases where length of time operates as a bar to an action, and those in which it can be used only as matter of evidence. In the former, it may be pleaded in bar, and is conclusive, though the debt be not paid. But when relied upon as mere evidence, it only raises a presumptive fact which may be repelled by other circumstances to be considered in arriving at the truth. Bissell v. Jandon, 16 Ohio St. 498; Brobst v. Brock, 10 Wall. 519; Baily v. Jackson, 16 Johns. 210; Shields v. Pringle, 2 Bibb, 387; Howland v. Shurtliff, 2 Met. 28.
The circumstances disclosed by the evidence clearly rebut the presumption of payment arising from lapse of time, and •show that no part of the amount of the decree was ever paid.
Are the plaintiffs, then, in a position entitling them to equitable relief? It is to be borne in mind that the plaintiffs are not defending against the enforcement of the mortgage, or the decree rendered thereon against them, but are invoking affirmative relief. But relief can not be granted upon principles of equity until the party affirmatively establishes facts which entitle him thereto. Unless that be •done, equity leaves the parties- where it found ■ them. *112 While, on the one hand, it refuses relief, on the other it’ does not debar them from any defense either may be entitled to when aggressively attacked.
In this case the plaintiffs seek, in effect, a cancellation of the mortgage decree, and a transfer to them of the legal title held by those standing in the shoes of the mortgagee. This they ask, not that they have affirmatively shown payment of the amount of the decree in fact, but it is sought upon the ground of presumptive payment only. But if the presumption of payment, which arises from lapse-of time only, is rebutted by other circumstances, the party is left without any ground for the interposition of a court of equity.
If, however, the presumption were not repelled, is the-mere presumption of payment arising from lapse of time only sufficient to entitle a party to affirmative l’elief ? It does not follow, because such presumption may be successfully used as a defensive weapon, that it is equally available as an instrument of attack. While, on the one hand, a court of equity will not enforce a stale claim, on the-other it will not, as a general rule, grant relief upon a mere-presumption of fact. A party must show affirmatively that he is entitled to the relief invoked. He does not stand in this position-without he establishes the fact which entitles Mm to the relief sought. If it is payment of a claim,, actual payment must be shown.
In Morey v. Farmers’ Loan and Trust Co., 14 N. Y. 302, this doctrine is maintained. It was an action to enforce specific performance of a land contract. Speaking of the presumption of payment arising from lapse of time-under a statute of that state, it is said in the opinion of the court:
“ No precedent, it is believed, can be found in this state, where it has been used, save as a shield, nor any case which countenances the doctrine that a party, in a court of equity, may avail himself of it for affirmative action. It will scarcely be pretended that equity would compel the-cancellation of a bond on the mere legal presumption of *113 payment; but the obligor would be left to his defense at law. Nor should a court of equity decree a specific performance of a contract to convey lands, relying solely on the legal presumption, from lapse of time, of payment of the purchase money, and without proof of actual payment. An action of that character is founded upon a mere equitable and reciprocal trust. In equity, the vendee is a trustee of the purchase money for the use of the vendors. The discharge of this trust by payment can not be presumed,, but must be proven.” To the same effect is Lawrence v. Ball, Ib. 447.
The controlling principle of these cases is equally applicable to this, and is decisive of the case.
The vieiv we have taken of the ease renders it unnecessary for us to determine the question made in argument,, whether the decree in question operated as a foreclosure of the plaintiff’s equity of redemption, without further action of the court finding the non-payment of the amount decreed to be due. Eor, if the equity of the plaintiffs was. not foreclosed, as already shown, the plaintiff’s are not in a position to demand the affirmative action of the court. If it was foreclosed, they have no ground of claim but that of twenty-one years’ possession under the statute. But this possession must be adverse. Waiving all other objections-to this claim, the proof, as it comes before us, will not warrant us in finding that the possession of the plaintiffs was adverse to the title of Adam Everly. Nor does it show that he abandoned his claim to the land. On the contrary, it evinces a purpose on his part, after his mortgage claim had. run for years after due, and amounted to more than the value of the land, to foreclose the mortgage and take the land for the debt, and to permit the family of the mortgagor,, who were his relatives, to occupy the farm free of charge during his life. This purpose he never changed. Fortunately for the family of Barnett, he lived to an advanced age. Now that he is dead, their long possession, acknowledged as an indulgence while he was living, is made the pretext *114 for supplanting the heir,” that they may “ seize on his inheritance.” The enterprise can find no aid in equity.
But it is claimed that the parties who are made defendants in the case, do not show a legal title in themselves, and that the plaintiffs are therefore entitled to a decree against them. It may be replied that the plaintiffs do not show themselves to be legally entitled; for, as between the parties to a mortgage, and those claiming under them, the legal title is vested in the mortgagee. Rand v. Kendall, 15 Ohio, 671; Brobst v. Brock, 10 Wall. 519.
This claim, however, is founded on the will of Adam Everly, who devised the land in question to a trustee, in whom the legal title is vested. But, by the terms of the will, the title is to be held by the trustee for the exclusive use and benefit of the children of the testator’, and their iheirs; and it appears from the evidence that the testator was the ancestor of the defendants. They are, then, the cestuis que trust, having the full equity of the mortgagee in the premises, which is either the use of the land, or the .amount of the decree against it. The mortgage, therefore, being foreclosed or remaining unpaid, in either case, carries with the legal title in the trustee an equity in the defend.ants superior to that of the plaintiffs.
In any view, then, of the case, as it now comes before us, .the plaintiffs are not entitled to the relief invoked.

Petition dismissed.

McIlvaine, Welch, Stone, and White, JJ., concurring.